**GABRIELLI LEVITT LLP**
Michael J. Gabrielli
michael@gabriellilaw.com
2426 Eastchester Road, Suite 215
Bronx, New York 10469
Telephone: (718) 708-5322
Facsimile: (718) 708-5966

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTA SOBOTKA, individually and on behalf of other similarly situated individuals, <br><br> Plaintiff, <br><br> v. <br><br> THEO CHOCOLATE, INC., <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff, Marta Sobotka ("Plaintiff"), a resident of New York, on behalf of herself and all others similarly situated, by and through her undersigned counsel, alleges the following based upon her own personal knowledge as to her own actions and her counsel's investigation, and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      This is a proposed consumer protection class action against Defendant, Theo Chocolate, Inc. ("Theo"), for injunctive relief and economic damages based on misrepresentations and omissions committed by Theo regarding certain dark chocolate bars (the "Product" or "Products").[1]

2.      Aware of the health risks and environmental damage caused by chemical-laden foods, consumers increasingly demand foods that are pure and free of contaminants or artificial chemicals.

---

[1] The Products include, but are not limited to, Theo Organic Pure Dark 70% Cocoa and Theo Organic Extra Dark Pure Dark Chocolate 85% Cocoa. Discovery may demonstrate, however, that additional Theo products are within the scope of this Complaint.

3.      With the knowledge of such consumer preferences and intending to capitalize on them, Defendant labels its Products as "Pure." *See*, **Exhibit A**, annexed hereto.

4.      These claims are false, deceptive, and misleading. The Products at issue are not "Pure" and instead contain significant levels of the toxic heavy metals, cadmium and lead.

5.      More specifically, a report by Consumer Reports[2] states that "[r]esearch has found that some dark chocolate bars contain cadmium and lead—two heavy metals linked to a host of health problems in children and adults," in amounts such that "eating just an ounce a day would put an adult over a level that public health authorities and [Consumer Report's] experts say may be harmful for at least one of those heavy metals." Among those containing substantial levels of cadmium and lead are the Products at issue.

6.      In particular, Theo Organic Pure Dark 70% Cocoa tested at 142% of California's maximum allowable dose level (MADL) for cadmium and 120% for lead, while Theo Organic Extra Dark Pure Dark Chocolate 85% Cocoa tested at 189% of California's MADL for cadmium and 140% for lead.[3]

7.      Lead and cadmium are heavy metals and their presence in food, alone or combined, poses a serious safety risk to consumers because they can cause cancer as well as serious and often irreversible damage to brain development, liver, kidneys and bones. As Consumer Reports noted, "both cadmium and lead pose serious health risks" and, with respect to lead specifically, "no amount of it is considered safe."

8.      Defendant falsely claims that the Products are "Pure" despite the presence of cadmium and lead.

9.      By deceiving consumers about the nature, quality, and/or ingredients of the Products, Defendant is able to sell a greater volume of the Products, charge higher prices for the Products, and take away market share from competing products, thereby increasing its own sales and profits.

10.     Consumers lack the scientific knowledge and means necessary to determine whether the Products are in fact "Pure" and to know or ascertain the true contents and quality of the Products. Reasonable consumers must and do rely on Defendant to report honestly what the Products contain and whether the ingredients are in fact "Pure."

11.     Theo conceals the presence of cadmium and lead, which are toxic heavy metals, in its supposedly "Pure" Products.

---

[2] https://www.consumerreports.org/health/food-safety/lead-and-cadmium-in-dark-chocolate-a8480295550/

[3] *Id.*

12.     Defendant intended for consumers to rely on its representations, and reasonable consumers did in fact so rely. As a result of its false and misleading labeling and omissions of fact, Defendant was and is able to sell the Products throughout the United States and to realize sizeable profits.

13.     The sales of the Products constitute unlawful trade practices because such sales offend public policy, and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

14.     Reasonable consumers do not expect a product advertised as "Pure" to include significant levels of toxic heavy metals.

15.     By touting the purity of the Products, reasonable consumers are deceived by Theo, as they are likely to focus on the "Pure" representation and be misled into believing that the Products are in fact "pure."[4]

16.     Theo's representations are unlawful, misleading, and deceptive because they represent that the Products are "Pure" without disclosing that there is, in fact, significant levels of toxic heavy metals present in the Products.

17.     The presence of lead and cadmium is not disclosed anywhere on the Products' packaging. The presence of lead and cadmium can only be ascertained through a chemical study far beyond the degree of inquiry that a reasonable consumer can be expected to make in a retail store aisle. Thus, when deciding which dark chocolate bar to buy, consumers must rely on affirmative representations made by Theo, such as "Pure."

18.     Through its deceptive practice of marketing and selling the Products as "Pure" despite the presence of lead and cadmium, Theo is able to sell more of the Products than they would be able to had they not deceived consumers about the nature and/or quality of the Products.

19.     Because the Products contain toxic heavy metals, Theo's claims on the Products' labeling and in the Products' marketing that the Products are "Pure" are false and misleading. Consequently, consumers are deceived into purchasing the Products.

20.     In deciding to purchase the Products, Plaintiff saw, relied upon, and reasonably believed Theo's representations that the Products were "Pure." These representations were a significant reason for her purchase of the Products.

---

[4] https://us.search.yahoo.com/yhs/search?hspart=ima&hsimp=yhs-batch1&p=pure+definition&type=q3100_D3YIF_set_bcrq&guccounter=1 (defining "Pure" as "not mixed or adulterated with any other substance or material . . . "free of pollutants . . . or other unwanted elements . . . containing nothing inappropriate).

21.    Had Plaintiff known at the time that the Products contained significant levels of toxic heavy metals, she would not have purchased or continued to purchase the Products.

22.    If the Products were produced in such a way that Theo's representations were truthful, i.e., such that the Products contained only "Pure" dark chocolate and no toxic heavy metals, Plaintiff would consider purchasing the Products in the future.

23.    Plaintiff wishes to purchase natural and pure dark chocolate products in the future and has an interest in ensuring that such representations on packaging and websites are honest.

24.    Plaintiff and Class Members have suffered an ascertainable and out-of-pocket loss. Plaintiff and the Class members all paid money for Theo's dark chocolate bars but did not obtain the full value of the advertised products due to Theo's misrepresentations and omissions regarding whether the products are "Pure," while concealing that the Products contain the toxic heavy metals, cadmium and lead. Plaintiff and the Class members purchased, purchased more of, or paid more for Theo's dark chocolate bars than they would have had they known the truth about the Products. Accordingly, Plaintiffs and the Class members have suffered "injury in fact" and lost money or property as a result of Defendant's wrongful conduct.

## JURISDICTION AND VENUE

25.    This Court has personal jurisdiction over Theo, which conducts business throughout New York State and within this judicial district. Plaintiff's claims arise out of Theo's conduct within the State of New York.

26.    This Court has original subject-matter jurisdiction over this proposed class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed class, any member of the class is a citizen of a State different from the State of citizenship of any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that there are at least 100 members in the proposed class and that the matter in controversy is well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

27.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to Plaintiff's claims, including Theo's dissemination of false and misleading information regarding the nature and/or quality of the Products, occurred within this District.

## PARTIES

28.     At all times mentioned herein, the Defendant, Theo, was a Washington corporation headquartered in Seattle, Washington. Theo was and is, at all relevant times, engaged in commercial transactions throughout the State of New York, including this District.

29.     Defendant manufactures and/or causes the manufacture of chocolate products, and markets and distributes the products in retail stores in New York and throughout the United States.

30.     At all times mentioned herein, Plaintiff was and is an individual consumer over the age of eighteen, a citizen of the state of New York, and a resident of the county of Nassau. During the Class Period, Plaintiff purchased the Products on multiple occasions at a Whole Foods supermarket store located on Northern Boulevard in Manhasset, New York.

31.     In deciding to make these purchases, Plaintiff saw, relied upon, and reasonably believed that the Products were "Pure."

32.     Had Plaintiff known at the time that the Products contained significant levels of the toxic heavy metals, lead and cadmium, she would not have purchased or continued to purchase the Products.

33.     Plaintiff endeavors to make healthy choices and is willing to pay more for "pure" products, such as the Products at issue, believing she is purchasing a superior product.

34.     Although Plaintiff has ceased buying the Products for the time being, due to concerns around its misrepresentation regarding the "pure" quality of the Products, she would resume buying the Products in the future if the "pure" representations accurately reflected the Products.

## SUBSTANTIVE ALLEGATIONS

35.     American consumers increasingly and consciously seek out pure and healthful food products. Once a small niche market, pure and healthful foods are now sold by conventional retailers, and their sales continue to soar.

36.     Consumers value pure foods, including dark chocolate, for myriad health, environmental, and political reasons, including avoiding chemicals and additives, attaining health and wellness, helping the environment, and financially supporting companies that share these values.

### A.    Defendant Cultivates a "Pure" Brand Image for Theo Products

37.    Defendant knows that consumers seek out and wish to purchase pure foods that do not contain significant levels of toxic heavy metals, and that consumers will pay more for foods that they believe to be pure than they will pay for foods that they do not believe to be pure.

38.    Thus, Defendant markets its Products as "Pure" in order to induce consumers to purchase their Products, to purchase more of their Products, and to prefer their Products over competing products.

### B.    Defendant Represents The Products as "Pure"

39.    Defendant holds itself out to the public as a trusted expert in the production of chocolate.

40.    Defendant knew what representations it made on the labels of the Products. It also knew how the products were produced and processed, and that they contain lead and cadmium.

41.    Defendant thus knew all the facts demonstrating that the Products were mislabeled and falsely advertised.

42.    The Products are nonetheless uniformly advertised as being "Pure." These representations prominently appear on the front label of the Products.

43.    Should any consumer seek further information, Defendant's website likewise represents the Products as "Pure."[5]

44.    Defendant's conduct in labeling or representing the Products as "Pure" deceived and/or was likely to deceive the public.

45.    Plaintiff and consumers were deceived into believing that the Products are "Pure" and that there is nothing in the products other than chocolate.

46.    Consumers cannot discover the true nature of the Products from reading the label. Consumers cannot not discover the true nature of the products even by visiting Theo's website, which makes no mention of the amounts of lead and cadmium in the Products. Discovery of the true nature of the Products requires knowledge of chemistry and access to laboratory testing that is not available to the average reasonable

---

[5] *See*, https://theochocolate.com/pure-85/; https://theochocolate.com/pure-70/.

consumer.

47.     Plaintiff and the members of the Class are therefore not at fault for failing to discover Defendant's wrongs earlier and had no actual or presumptive knowledge of facts sufficient to put them on notice.

48.     Defendant made the false, misleading, and deceptive representations and omissions intending for Plaintiff and Class Members to rely upon these representations and omissions in purchasing the Products.

49.     In making the false, misleading, and deceptive representations and omissions at issue, Defendant knew and intended that consumers would purchase the Products when consumers would otherwise purchase a competing product, or that consumers would purchase more Theo Products than otherwise.

50.     Consumers are willing to pay more for a product represented to be "Pure" and they expect that product to be free of significant levels of toxic heavy metals such as lead and cadmium.

51.     In making the false, misleading, and deceptive representations and omissions at issue, Defendant also knew and intended that consumers would pay more for "Pure" products that are free of contaminants than consumers would pay for products that are not "Pure," furthering Defendant's private interest of increasing sales of its products.

52.     Upon information and belief, Defendant has thus profited enormously from its falsely marketed Products and its carefully orchestrated label and image.

53.     Representing that a product is "Pure," despite the presence of significant levels of the toxic heavy metals lead and cadmium, is a false statement of fact.

54.     Consumers reasonably believe that a product represented as "Pure" does not contain toxic heavy metals.

55.     Defendant knows and intends that when consumers see the Product labels, Defendant's website, or advertisements promising the Products as "Pure," consumers will understand that to mean that, at the very least, that the Products do not contain significant levels of toxic heavy metals.

56.     Consumers reasonably expect that if a product contains significant levels of toxic heavy metals, the product will not be labeled as "Pure."

C.      **Lead and Cadmium Are Not Pure**

57.     Defendant's representations that the Products are "Pure" are false. In fact, quantitative testing revealed that the Products contain lead and cadmium.

58.     Tests conducted by an independent laboratory have confirmed the findings by Consumer Reports, a consumer protection and advocacy organization dedicated to independent product testing, consumer- oriented research, and investigative journalism, who in December 2022, tested 28 different dark chocolate bars for lead and cadmium. The results showed that Theo Organic Pure Dark 70% Cocoa tested at 142% of California's Maximum Allowable Dose Level ("MADL") for cadmium and 120% for lead, while Theo Organic Extra Dark Pure Dark Chocolate 85% Cocoa tested at 189% of California's MADL for cadmium and 140% for lead. The MADL standards are set by the California Office of Environmental Health Hazard Assessment ["OEHHA"].

59.     Theo Products thus are not "Pure" and labeling or advertising the products as such is misleading and deceptive.

60.     California recognizes that certain chemicals and elements are "known to the state to cause cancer or reproductive toxicity . . . if in the opinion of the state's qualified experts it has been clearly shown through scientifically valid testing according to generally accepted principles to cause cancer or reproductive toxicity." *See* Cal. Health & Safety Code § 25249.8(b). Cadmium, in the amount found in the Product, is on the list of chemicals known to cause cancer and/or reproductive harm.

61.     The harmful effects of lead, *in any amount*, are well-documented, particularly on children. Exposure puts children at risk for lowered IQ, behavioral problems (such as attention deficit hyperactivity disorder (ADHD)), type 2 diabetes, and cancer, among other health issues. Heavy metals also pose risks to adults. Even modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions. As such, it is important to limit exposure.

62.     "No amount of lead is known to be safe."[6] Exposure to lead may cause anemia, weakness, and kidney and brain damage.[7] Lead affects almost every organ and system in the body and accumulates over time, leading to severe health risks and toxicity, including inhibiting neurological function, anemia, kidney damage, seizures, and in extreme cases, coma and death.[8] Lead can also cross the fetal barrier during

---

[6] *See* https://www.npr.org/sections/thetwo-way/2016/08/13/489825051/lead-levels-below- epalimits-can-still-impact-your-health

[7] https://www.cdc.gov/niosh/topics/lead/health.html

[8] *Id.*

pregnancy, exposing the mother and developing fetus to serious risks, including reduced growth and premature birth.[9] Lead exposure is also harmful to adults as more than 90 percent of the total body burden of lead is accumulated in the bones, where it is stored.[10] Lead in bones may be released into blood, re-exposing organ systems long after the original exposure.[11]

63.    Cadmium, also a heavy metal, likewise poses a serious safety risk to consumers because it can cause cancer and is a known teratogen, an agent which causes malformation of an embryo. Exposure to cadmium can affect the kidneys, lungs and bones.[12] There may be no safe level of exposure to a carcinogen, so all contact should be reduced to the lowest possible level.[13] It is considered a class 1 carcinogen by the World Health Organization.[14] Even at low exposure, cadmium can cause nausea, vomiting, diarrhea and abdominal pain.

64.    Moreover, because cadmium builds up in the body, *even at low dosage,* **repeated exposure** can cause liver and kidney damage, anemia and loss of smell. According to the Centers for Disease Control, "exposure to low levels of cadmium in . . . food . . . over time may build up cadmium in the kidneys and cause kidney disease and fragile bones" and is indisputably "considered a cancer-causing agent."[15]

65.    It is undisputed that the Product contains lead and cadmium, and that Theo has known as much for at least the last four years. In August 2018, or perhaps as early as 2014, Theo (and several other manufacturers and distributors of dark chocolate products) received notice that at least some of its dark chocolate products contained excessive cadmium and lead, including by being provided with certificates of merit that independent experts confirmed the presence of heavy metals.[16]

---

[9] *See* https://www.cdc.gov/nceh/lead/prevention/pregnant.htm

[10] *See* State of New York Department of Health, "Lead Exposure in Adults: A Guide for Health Care Providers," available online at https://www.health.ny.gov/publications/2584.pdf.

[11] *Id.*

[12] https://www.betterhealth.vic.gov.au/health/healthyliving/cadmium

[13] New Jersey Department of Health Fact Sheet (available online at https://www.nj.gov/health/eoh/rtkweb/documents/fs/0305.pdf)

[14] https://www.unep.org/explore-topics/chemicals-waste/what-we-do/emerging-issues/lead- and-cadmium

[15] https://tinyurl.com/y4f2kku7

[16] https://www.asyousow.org/environmental-health/toxic-enforcement/toxic-chocolate

66.     Nonetheless, despite being on notice for several years that the Products contain high levels of lead and cadmium, Theo has persisted to advertise the Products as "Pure."

**D.    Reasonable Consumers Do Not Expect Heavy Metals in the Products; Theo Nevertheless Represents the Products as "Pure" Despite Being Aware of the Presence of Lead and Cadmium in the Products**

67.     The global dark chocolate market has witnessed significant growth in recent years and is expected to continue growing into 2023.[17]

68.     The growth of dark chocolate sales is premised, in part, on reasonable consumers' belief that dark chocolate is actually *healthier* than other food choices, and especially healthier than other confectionaries and milk chocolates. "The pervasive health and wellness trend continues to influence dark chocolate market, with manufacturers incorporating organic ingredients and natural sweeteners. The preference for dark chocolate over milk chocolates on accounts its health benefits continues to remain intact," especially as demand for healthy products, generally, increases.[18] Thus, the safety and health effects of the Product are material facts to reasonable consumers.

69.     Given the negative effects of toxic lead and cadmium on human development, especially in embryos and children, and on adult health, the presence of toxic heavy metals in the Product is a material fact to reasonable consumers, including Plaintiff and members of the Class.

70.     A food company like Theo, which prides itself on environmental improvement, human health, and sustainability, has earned significant public trust that its foods are safe and fit for regular consumption. Reasonable consumers believe that Theo would not sell Products labeled as "pure" despite having knowledge that the Products contain toxic heavy metals.

71.     Theo knows that if the presence of significant levels of toxic heavy metals in its Products labeled as "Pure" was disclosed to Plaintiff and the Class members, they would be unwilling to purchase the Products or would pay less for them.

72.     In light of Theo's knowledge that Plaintiff and the Class members would be unwilling to purchase "Pure" Products or would pay less for the Products if they knew that the Products contained

---

[17] https://www.persistencemarketresearch.com/market-research/dark-chocolate-market.asp

[18] *Id.*

significant levels of toxic heavy metals, Theo intentionally and knowingly concealed this fact from Plaintiff and the Class Members.

73. Theo knew or should have known that Plaintiff and the Class members would rely upon the packaging of the Products and intended for them to do so but continued to label the Products as "Pure" despite being aware of the presence of lead and cadmium.

74. Theo knew or should have known that it owed consumers a duty of care to adequately test for lead, cadmium and other heavy metals, particularly considering that it was provided notice of independent expert testing of the Products. Had Theo done so, it would have known that its Products contained significant levels of lead and cadmium. Alternatively, Theo *did* know that its Products contained significant levels of heavy metals and purposely hid that fact from consumers.

75. Additionally, Theo knew or should have been aware that a reasonable consumer would consume the Products regularly, and possibly multiple Products daily, leading to *repeated* exposure to both lead and cadmium, which each independently *accumulate in the body and its systems over time*.

76. Prior to purchasing the Products, Plaintiff and the Class members were exposed to, saw, read, and understood the labels of the Products, which represented the Products as "Pure," and relied upon the same in purchasing the Products.

77. As a result of Theo's concealment of the fact that the Product contained significant levels of toxic heavy metals, including lead and cadmium, Plaintiff and the Class members reasonably believed the Products were "Pure" and thus free from substances that would negatively affect children's development as well as their own health.

78. Plaintiff and the Class members purchased the Theo Products in reliance upon Theo's labels that contained omissions.

79. Had Plaintiff and the Class members known that the Products contained significant levels of toxic heavy metals, rendering them impure, they would not have been willing to purchase the Products or would have paid less for them.

80. Therefore, as a direct and proximate result of Theo's omissions concerning the Products, Plaintiff and the Class Members purchased the Products and paid more than they were worth.

81. Plaintiff and the Class members were harmed in the form of the monies they paid for the Products which they would not otherwise have paid had they known the truth about the Products. Since the presence of significant levels of toxic heavy metals, including lead and cadmium, in the Products renders them

impure and unsafe for human consumption, the Products that Plaintiff and the Class members purchased are worthless, or at a minimum are worth less than Plaintiff and the Class paid for them.

**E.      Consumers Reasonably Rely on Defendant's False and Misleading Representations**

82.      Consumers frequently rely on label representations and information in making purchase decisions, especially when purchasing food.

83.      When Plaintiff and Class Members purchased the Products, the Products were labeled and/or marketed as "Pure," despite the presence of significant levels of the toxic heavy metals, lead and cadmium.

84.      These misrepresentations and omissions were uniform and were communicated to Plaintiff and every other member of the Class at every point of purchase and consumption.

85.      Plaintiff and Class Members were among the intended recipients of Defendant's deceptive representations and omissions.

86.      Plaintiff and Class Members reasonably relied to their detriment on Defendant's misleading representations and omissions.

87.      Defendant's false, misleading, and deceptive misrepresentations and omissions deceived and misled, and are likely to continue to deceive and mislead, Plaintiff and Class Members, reasonable consumers, and the general public.

88.      Defendant's misleading affirmative statements further obscured what it failed to disclose. Thus, reliance upon Defendant's misleading and deceptive representations and omissions may be presumed.

89.      Defendant made the deceptive representations and omissions with the intent to induce Plaintiff and Class Members to purchase the Products.  Plaintiff's and Class Members' reliance upon such misrepresentations and omissions may be presumed.

90.      Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions. Thus, Plaintiff's and the Class Members' reliance upon such representations and omissions may be presumed as a matter of law; the representations and omissions were material; and a nexus exists between Defendant's conduct, on the one hand, and Plaintiff's and the Class Members' decisions to purchase the Products at a certain price, on the other hand.

F.    **Defendant Benefited From Its Misleading Representations and Omissions**

91.    As the intended, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant has been unjustly enriched through more sales of the Products and higher profits at the expense of Plaintiff and Class Members. As a direct and proximate result of its deception, Defendant also unfairly obtained other benefits, including the higher value associated with a brand that sells "Pure" products, redirecting sales to it and away from its competitors, and increased sales of its other products.

92.    Plaintiff, and all other similarly situated consumers, did not bargain for "Pure" products that contain significant levels of toxic heavy metals in exchange for their payment of the purchase price.

93.    Upon information and belief, Defendant has failed to remedy the problem with the Products, thus causing future harm to consumers.

94.    Plaintiff would continue to purchase the Products again in the future if the products were reformulated so that the label was truthful and the products did not contain significant levels of lead and cadmium.

95.    Plaintiff contends that the Products were and are sold pursuant to unfair and unconscionable trade practices because the sale of the products offends public policy and is immoral, unethical, oppressive, and unscrupulous, and caused substantial economic injuries to Plaintiff and Class Members.

96.    Reasonable consumers do not expect the Products advertised as "Pure" to contain significant levels of toxic heavy metals such as lead and cadmium. Defendant's statements and other representations convey a series of express and implied claims and/or omissions that it knows are material to the reasonable consumer in making a purchasing decision, and that it intended for consumers to rely upon when choosing to purchase the Products.

97.    In labeling the Products as "Pure," Defendant misrepresented the nature, quality, and/or ingredients of the Products, which was and is false, misleading, and/or likely to deceive reasonable consumers.

98.    Therefore, the Products are not worth the purchase price that Plaintiff and Class Members paid for them, and are not what Plaintiff and Class Members reasonably intended to receive.

99.    Accordingly, Plaintiff seeks, individually and on behalf of all other similarly situated purchasers of the Products during the Class Period, injunctive relief, and actual economic damages equaling the amount Plaintiff and Class Members paid for the the Products based on Defendant's representations that the Products are "Pure."

100.    Plaintiff also seeks declaratory relief in the form of an order declaring Defendant's conduct to be unlawful, as well as injunctive and equitable relief putting an end to Defendant's misleading and unfair business practices, including (1) removing any statement that the Products are "Pure," or any similar claim; and/or (2) a reformulation of the Products so that they no longer contain lead and cadmium.

## CLASS ALLEGATIONS

101.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following nationwide class (the "Class"):

> All persons in the United States who purchased the Products during the applicable limitations period (the "Class Period"). Excluded from the Class are Theo's officers and directors; members of the immediate families of Theo's officers and directors; Theo's legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

102.    Additionally, Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following sub-class (the "New York Sub-Class"):

> All New York residents who purchased the Products in New York during the Class Period. Excluded from the Class are Theo's officers and directors; members of the immediate families of Theo's officers and directors; Theo's legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

103.    Plaintiff reserves the right to revise the Class and Sub-Class (collectively, the "Classes") definitions based on facts learned in the course of litigating this matter.

104.    At this time, Plaintiff does not know the exact number of members of the Class or the New York Sub-Class, but given the nature of the claims and the number of online websites and retail stores selling the Products, Plaintiff believes the Class members are so numerous that joinder of all of them is impracticable.

105.    There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class and the New York Sub-Class that predominate over questions that may affect individual members include but are not limited to:

a.    Whether Theo labeled, marketed, advertised, and/or sold the Products to Plaintiff and the other members of the Class using false, misleading, and/or deceptive statements or representations, including statements or representations concerning the nature and/or quality of the Products;

b.    Whether Theo omitted and/or misrepresented material facts in connection with the sales of the Products;

c.    Whether Theo participated in and pursued the common course of conduct complained of herein;

d.    Whether Theo has been unjustly enriched; and

e.    Whether Theo's labeling, marketing, advertising, and/or selling of the Products as "Pure" constitutes an unfair or deceptive consumer sales practice.

106.    Plaintiff's claims are typical of those of the Class members because Plaintiff, like all members of the Class, purchased the Products based upon the representations of purity in a typical consumer setting and sustained damages from Theo's wrongful conduct.

107.    Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has retained counsel that are experienced in litigating complex class actions. Neither Plaintiff nor her counsel have any interests that are adverse to those of the Class.

108.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

109.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met, as Theo has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

110.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Theo. Additionally, individual actions may be dispositive of the interests of all members of the Class, even though certain members of the Class are not parties to such actions.

111.    Theo's conduct is generally applicable to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Theo's systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**(Violation of the New York General Business Law § 349: Mislabeling)**
**On Behalf of the New York Sub-Class**

112.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

113.     Theo has labeled and/or otherwise represented the Products as "Pure" and has otherwise presented an image and marketing materials suggesting that the Products contain nothing impure, when in fact the Products contain significant levels of toxic heavy metals, such as lead and cadmium.

114.     Theo has violated, and continues to violate, § 349 of the New York General Business Law, which makes deceptive acts and practices unlawful. As a direct and proximate result of Theo's violation of § 349, Plaintiff and the New York Sub-Class Members have suffered damages in an amount to be determined at trial.

115.     By reason of the foregoing, Theo is liable to Plaintiff and New York Sub-Class Members for actual damages or fifty dollars ($50) for each sale of the Products (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

116.     Pursuant to New York General Business Law § 349, Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Theo from continuing to engage in unfair or deceptive business practices or any other act prohibited by law.

117.     Plaintiff and New York Sub-Class Members may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

118.     The unfair and deceptive acts and practices of Theo, as described above, present a serious threat to Plaintiff and New York Sub-Class Members.

THEREFORE, Plaintiff prays for relief as set forth below.

### COUNT II

**(Violation of the New York General Business Law § 350)**
**On Behalf of the New York Sub-Class**

119.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

120.    New York General Business Law § 350 provides: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

121.    GBL § 350-a defines "false advertising," in relevant part, as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations."

122.    Plaintiff and New York Sub-Class Members are consumers who purchased the Products in New York.

123.    As sellers of goods to the consuming public, Theo is engaged in the conduct of business, trade, or commerce within the intended ambit of GBL § 350.

124.    Theo's representations made by statement, word, design, device, sound, or any combination thereof, and also the extent to which Theo's advertising fails to reveal material facts with respect to the Products, as described above, constitute false advertising in violation of the New York General Business Law.

125.    Theo's false advertising was knowing and intentional.

126.    Theo's actions led to direct, foreseeable, and proximate injury to Plaintiff and New York Sub-Class Members.

127.    As a consequence of Theo's deceptive marketing scheme, Plaintiff and New York Sub-Class Members suffered an ascertainable loss, insofar as they would not have purchased the Products had the truth been known, or would have purchased the products on different terms, and as a result of Theo's conduct, they received a product of less value than what they paid for.

128.    By reason of the foregoing, Theo is liable to Plaintiff and New York Sub-Class Members for actual damages or five hundred dollars ($500) for each sale of the Products (whichever is greater), injunctive relief, attorneys' fees, and the costs of this suit.

129.    Plaintiff and New York Sub-Class Members further seek to enjoin the false advertising described above.

130.    Absent injunctive relief, Theo will continue to deceptively market the Products.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT III

### (Based on Breach of Express Warranty)
### On Behalf of the Class

131.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

132.     Theo provided Plaintiff and Class Members with written express warranties including, but not limited to, warranties that Products were "Pure."

133.     These affirmations of fact or promises by Theo relate to the goods and became part of the basis of the bargain.

134.     Plaintiff and Class Members purchased the Products believing them to conform to the express warranties.

135.     Theo breached these warranties. This breach resulted in damages to Plaintiff and Class Members, who bought the Products but did not receive the goods as warranted.

136.     As a proximate result of the breach of warranties by Theo, Plaintiff and the Class Members did not receive goods as warranted. Plaintiff and the members of the Class therefore have been injured and have suffered damages in an amount to be proven at trial. Among other things, Plaintiff and Class Members did not receive the benefit of the bargain and have suffered other injuries as detailed above. Moreover, had Plaintiff and Class Members known the true facts, they would not have purchased the Products, or would have purchased the Products on different terms.

THEREFORE, Plaintiff prays for relief as set forth below.

## COUNT IV

### (Unjust Enrichment)
### On Behalf of the Class

137.     Plaintiff re-alleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

138.     As a result of Theo's false, misleading, and deceptive labeling, advertising, marketing, and sales of the Products, Theo was enriched at the expense of Plaintiff and Class Members through the payment of the purchase price, or for the payment of a price higher than otherwise would have been paid, for the Products.

139.     Under the circumstances, it would be against equity and good conscience to permit Theo to retain the ill-gotten benefits that it received from Plaintiff and Class Members, in light of the fact that the Products purchased by Plaintiff and Class Members were not what Theo purported them to be. Thus, it would be unjust or inequitable for Theo to retain the benefit without restitution to Plaintiff and the other members of the Class for the monies paid to Theo for the Products.

THEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of herself and the proposed Classes providing such relief as follows:

A.     Certification of the Classes proposed herein under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3); appointment of Plaintiff as representative of the Classes; and appointment of her undersigned counsel as counsel for the Classes;

B.     A declaration that Theo is financially responsible for notifying members of the Classes of the pendency of this suit;

C.     An order requiring an accounting for, and imposition of a constructive trust upon, all monies received by Theo as a result of the unfair, misleading, and unlawful conduct alleged herein;

D.     Restitution, disgorgement, refund, and/or other monetary damages, together with costs and disbursements, including reasonable attorneys' fees pursuant to the applicable statutes and prejudgment interest at the maximum rate allowable by law;

E.     Injunctive relief pursuant to New York General Business Law § 349 and common law, enjoining Theo's unlawful and deceptive acts;

F.     Injunctive relief and statutory or actual damages pursuant to New York General Business Law § 350;

G.     Punitive damages in accordance with proof and in an amount consistent with applicable precedent; and

Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


DATED: July 19, 2023


                                        GABRIELLI LEVITT LLP


                                        _____
                                        Michael J. Gabrielli
                                        Email: michael@gabriellilaw.com
                                        2426 Eastchester Rd., Ste. 215
                                        Bronx, New York 10469
                                        Telephone: (718) 708-5322
                                        Facsimile: (718) 708-5966

                                        *Attorneys for Plaintiff and Proposed Class*